Russell et al. v. McCormick.

RUSSELL ET AL. *vs.* McCORMICK.

[BILL IN EQUITY TO ENFORCE VENDOR'S LIEN.]

1. *Vendor's lien; what not impaired by.*—A vendor's lien upon land for its purchase-money is not impaired because the obligation taken for its payment includes the price of personal property sold at the same time, when the amount to be paid for the land can be ascertained by proof.

2. *Obligation to pay a sum of money in coin, or chattels at a certain price, at option of promissor; when becomes absolute promise to pay coin.*—An obligation in writing to pay a specified sum of money, on a day certain, in coin, or cotton at twenty cents per pound, at the option of the promissor, becomes absolute pay coin, unless a tender of the cotton is made when due.

3. *Same; when at option of promissee, what does not require.*—A like obligation, when at the option of the creditor, does not require of him an election and notice to maker, in order to maintain his action to recover the coin.

APPEAL from Chancery Court of Barbour.
Heard before Hon. B. B. McCRAW,

ON the 31st of October, 1865, McCormick and appellant's testator agreed in writing for the sale by the former to the latter of eight hundred and eighty acres of land and a large amount of personal property, which is particularly set out in the agreement, together with the price of the

lands per acre, and of each article of the personal property. On the next day, Russell executed the following obligation :

"$11,840.   By the first day of January, A. D. 1867, I promise to pay James McCormick, or bearer, eleven thousand eight hundred and forty dollars, for land, stock, &c. The condition of the above note is to be ten bales of cotton paid on the above note by the first day of January, 1866 ; further, that I, J. C. Russell, have the right to pay one half the balance of the note in cotton at twenty cents per pound, or coin, optionary with Russell ; the other half of the note to be paid in coin, or cotton at twenty cents per pound, optionary with James McCormick.   If there is any left unpaid the first of January, 1867, it is to be extended until the first of January, 1868, at legal interest.   All the above note that is not paid on or before the first day of January, 1866, bears interest at eight per cent. until paid.
     Nov. 1st, 1865.

                                        J. C. RUSSELL."

At the bottom of this note was a description, by numbers, township and range, of the land.

McCormick, at the same time, conveyed by deed the land mentioned in the bill, to Russell, warranting the titles, and including in the deed one hundred and twenty acres of land called "lost lands," and described as a "tax paying claim" ; and Russell then entered into possession.   The proof shows that this last land was not a part of the land originally contracted for, but was "thrown in in the trade"; that Russell was fully informed by McCormick of the condition of the title to it, and that the deed was inadvertently made, by the person drawing it up, to include the "lost land" in the warranty of title to the other land sold.

Various payments by Russell, amounting to about four thousand six hundred dollars, up to January 12th, 1867, were placed by McCormick to the credit of the amount due for the personal property, Russell not giving any specific directions as to how it should be applied.

McCormick filed his bill on the 10th of April, 1868, and sought an account and the enforcement of his vendor's lien and the payment thereof in coin, and also prayed that the

deed made by him should be reformed, so as to express the true intention and understanding of the parties as to the one hundred and twenty acres of "lost land," it being drawn up as it was by mistake of the person writing the deed.

. The answer admits that some of the purchase-money for the land is due, but insists that the payment made should be deducted from the amount agreed to be paid for the land; and denies that McCormick has a vendor's lien on the land for the purchase-money of both the land and personal property; and also claims to be allowed, as an offset against the amount of the purchase-money for the land, the amount paid out by Russell to secure a perfect title to the one hundred and twenty acres of "lost land"; alleges that it was the intention of McCormick and Russell that the title to the "lost land" should be warranted, as well as the title to the rest of the land; and alleges that the amount thus found due is the true amount due for the purchase-money of said lands, and that this sum should be decreed to be for United States currency, or "greenbacks."

The cause was submitted on bill, answer, exhibits, testimony, and motion of respondent to dismiss for want of equity. The chancellor decreed that McCormick was entitled to the relief prayed for, and had a lien on the lands for the amount of the note still unpaid; and that the amount so found due, as by statement of the chancellor himself, is nine thousand five hundred and six dollars and ninety-seven cents, in gold or silver coin, in default of payment of which, the register was ordered to sell said lands, &c.; and further decreed a reformation of the deed according to the prayer of the bill. The defendant appeals.

The errors assigned are—

1st, The final decree.

2d, That the court erred in rendering a decree in favor of complainant to the extent to which the final decree goes in his favor.

GOLDTHWAITE, RICE & SEMPLE, for appellants.—The instrument executed by J. C. Russell to McCormick, on the first of November, 1865, and which is the foundation of the

present suit, is not a promissory note, although it begins like one. It is a special contract, imposing duties and obligations, not only upon Russell, but also upon McCormick. It is all-important to notice that no day or time is fixed for the payment of the cotton, if the option was for the cotton. The last clause of the note makes this clear. *Whidden v. Belmore,* 50 Conn. 357.

Even if it be conceded that the option, secured to Russell by the provision that he had the right to pay one-half of the balance of the note in cotton at twenty cents per pound, or coin, optionary with Russell, might be lost by his failure to exercise that option within a reasonable time ; yet it is very clear, first, that the bill of complaint and proof should have shown that he did not exercise his option within a reasonable time ; and, second, that as to " the other half " which was " to be paid in coin, or in cotton at twenty cents per pound, optionary with James McCormick," the latter (McCormick) can not sue in any court until he makes a demand ; he can not recover without alleging and proving a demand. *McMurray v. The State,* 6 Ala. 324, is conclusive on this last point.

This is not a promise to pay one of two things, at a given place, on a given day.—2 Parsons on Con. 5 Ed. 651, 657.

Upon such an instrument, and upon the contract for the sale of realty and personalty for a sum in gross, confounding the prices of the two so as to make it impossible to say what was the price of either, the vendor has no lien upon the land which he can enforce. Upon the pleadings and proofs, no court can say with any certainty, whether any part of the price of the land remains due and unpaid, and if so, what part remains due and unpaid. It never was heard of, that a mere vendor's lien for land can be enforced against personalty which he sold at the same time to the same vendee. It is the vendor's own fault that he has put his contract and payments in so confused a shape that the court can not, upon the pleadings and proofs, arrive with anything like certainty at the amount, if any, which remains unpaid of the price of the land ; and he must bear the consequences of this fault. He ought not to have made the contract and conducted himself so as to produce una-

voidable uncertainty and inextricable confusion. He can not call on the court to grope its way into the darkness of his own creation, or to indulge in mere guessing or conjecture. He has put anything like certainty out of his case.

The appellee founded his right on an executory agreement, which imposes duties upon him, as well as upon the other party. He does not allege and prove performance of what he was bound to do. And, on this ground, his bill must be dismissed.—2 Parsons on Con. 5 Ed. 529, and note (r).

Even if complainant is entitled to any decree, he is clearly not entitled to the decree rendered.

There is no equity in the bill; certainly none as to " the half" as to which complainant had the option.

PUGH & BAKER, contra.—1. The contract gives the debtor the right to pay half the debt by the 1st of January, 1868, in cotton at 20 cents, or coin. It gives the right to the creditor to demand payment in cotton at 20 cents, or coin, for the other half. Each party had the right as to half, the one to pay and the other to demand payment in cotton at twenty cents. It was to pay in cotton, or to get cotton, that induced this stipulation in the contract. The debtor would pay in cotton, if it was worth less than twenty cents. The creditor would demand cotton, if it was worth more than gold. The value of coin remained the same. Coin was the currency in which the whole debt was to be paid, if neither party elected to pay or demand cotton at twenty cents. The debtor failed to pay, or offer to pay, cotton or coin. Certainly this failure of the debtor can not enure to his benefit by allowing him now to pay in greenbacks. The court judicially knows that greenbacks were worth far less than gold. Why is the contract silent as to what will discharge the debt after the failure to pay in cotton or coin? Can it be contended that the parties intended greenbacks, when they specified how and in what the debt might be paid? It is manifest, that when the debtor failed to elect to pay in cotton, he was liable absolutely for gold or silver.—7 Ala. 775, and authorities cited.

The debtor had the right of election within a stated time, and not after that time.—*Stewart v. Donnelly,* 4 Yerger, 177.

Then, as to one half, the bill contains equity, and the motion to dismiss must fail.

The right to pay half was a stipulation for the debtor's benefit, and he lost the right by failing to claim it. How can he *increase* that benefit by his failure to elect?

2. As to the half the creditor had the right to demand in cotton or coin, that was a stipulation for his benefit, and what is the legal effect of his failure to take advantage of it? It certainly is not that his right to cotton or coin is forever lost. If the law compels him to take cotton at twenty cents, it may be that the debtor would be injured more than to require him to pay in coin. The failure of the creditor to elect leaves him the right to claim coin, that being the currency the sale was made in, as is clear from the contract itself.

Ought the creditor to have elected before filing his bill, as a condition precedent to his right to file it, and indispensable to the right to come into court? If he was bound to elect, he must have done so within the time allowed him, and that was at the maturity of the debt. How is the debtor injured by the creditor's failure to elect before filing the bill? If he is damaged, he might have avoided injury by doing what he bound himself by contract to do, and that was to pay *all the debt* in cotton or coin by the first day of January, 1868. Why did he not offer cotton or coin within the time, and compel the creditor to choose? In Parsons on Contracts, vol. 2, p. 152, and the case there cited in the note, it is stated that " if the obligation to pay be in the *alternative,* one thing or another, as the *creditor* may choose, the tender should be of *both,* that he may make his choice." What right has the debtor to complain that he was never called on for either cotton or coin, when he never offered either, and when his *contract* required him to pay cotton or coin in a given time?

The first part of the contract states a promise to pay so many *dollars ; this part, if signed before reciting the balance*

*of the agreement*, would have been a note *payable in coin* or *greenbacks ;* but the *whole* contract is stated, and *then* signed by the debtor, thus making it a debt payable in *coin currency*, but which could be paid in cotton at twenty cents within the time stipulated.

B. F. SAFFOLD, J.—There is no doubt about the equity of the bill. The land proceeded against is that for which the money was due, and no cause is shown why the vendor's lien does not attach.

The chief issue between the parties is the correctness of the decree ascertaining the complainant's demand in coin. The obligation of the debtor was to pay half of what is unpaid in cotton at twenty cents a pound, or coin, at his option, and the other half in the same way, at the option of the creditor, by a specified time. In *Lane v. Kirkman*, Minor, 411, where a note for a specified sum of money was payable on a day certain, but might be discharged with cotton at the market price, it was held that the plaintiff was not bound to demand the cotton, but the defendant should have made his election within the time allowed by the contract, and given notice thereof to the creditor, otherwise the obligation to pay money became absolute. This ruling is referred to and reaffirmed in 1 Stew. 524, 2 Stew. 444, 6 Ala. 324, 7 Ala. 775. In this case, there is no averment on the part of the defendant of readiness to perform the contract.

As to that part of the contract which gave option to the creditor, the decisions above referred to establish that where the agreement is to deliver a ponderous article upon a day certain, no demand is necessary to entitle the plaintiff to maintain his action, though it may be defeated by plea and proof of the defendant's readiness to deliver.

In *Townsend v. Wells*, 3 Day, 327, which was an action on a note for $80, payable in rum, sugar or molasses, at the election of the *payee*, within eight days after date, it was held not necessary to prove that the payee made his election, and gave notice thereof to the maker, but that if the defendant did not tender either of the articles within eight days, he became immediately liable on his note, and

the amount might be recovered in money.—See, also, 2 Penn. 63, 301; 3 Scam. 389. It seems to me, that where the creditor has the election of a ponderous article or money, his omission at the proper time to elect, should be regarded as an election to take the money. But the defendant does not plead a tender, or readiness to deliver, and, therefore, the complainant's right to the money is absolute.

The recovery in gold or silver coin was correct.—*Holt v. Given,* 43 Ala. 613; *Chisholm v. Arrington,* ib. 610; *Butler v. Horwitz,* 8 Wall.

There was no error in reforming the deed. The proof abundantly shows that there was no fraud or misrepresentation respecting the "lost lands," even if it does not appear from the deed that the warranty of title was not intended to apply to them.

The judgment is affirmed.